IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL MILLER,
  Plaintiff,

v.

YORK COUNTY REGIONAL POLICE
DEPARTMENT, CHIEF TIMOTHY DAMON,
and THE YORK COUNTY REGIONAL
POLICE BOARD OF COMMISSIONERS,
  Defendants.

Civil Action No. _____

**COMPLAINT**

Plaintiff Daniel Miller ("Plaintiff" or "Cpl. Miller"), by and through his undersigned counsel, hereby files this Complaint against Defendants York County Regional Police Department ("YCRPD"), Chief Timothy Damon ("Chief Damon"), and the York County Regional Police Board of Commissioners ("Board") (collectively "Defendants"), and in support thereof avers as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4), as this case involves federal questions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as all parties reside within this District and the events giving rise to these claims occurred within this District.

**PARTIES**

4. Plaintiff Daniel Miller is an adult individual residing in York County, Pennsylvania, and has been employed by YCRPD as a police officer since approximately 1999, serving with distinction for over 25 years.

5. Defendant YCRPD is a municipal police department located in York County, Pennsylvania, operating under color of state law and is an "employer" within the meaning of relevant statutes.

6. Defendant Chief Timothy Damon is the Chief of Police of YCRPD and, at all relevant times, acted under color of state law. He is sued in both his individual and official capacities.

7. Defendant Board is the governing body responsible for oversight of YCRPD and has final policymaking authority for the department.

## FACTUAL ALLEGATIONS

8. Prior to November 2021, Plaintiff held the rank of Corporal and served in numerous specialized roles including SWAT, Firearms Instructor, Active Shooter Instructor, and Honor Guard.

9. On November 14, 2021, Plaintiff was directed to oversee an investigation involving Ms. Marisa Vicosa and her minor children.

10. During this investigation, Ms. Vicosa obtained an emergency protective order for herself and her minor children pursuant to Pennsylvania's Protection From Abuse Act, 23 Pa.C.S. § 6101 et seq.

11. Chief Damon ordered Plaintiff not to attempt service of the lawfully issued emergency protective order, in direct violation of 23 Pa.C.S. § 6106(f), which requires police officers to make reasonable attempts to serve such orders.

12. Plaintiff, recognizing the illegality of this order under Pennsylvania law, attempted to contact Chief Damon multiple times to clarify the order but received no response.

13. On November 15, 2021, Plaintiff informed Ms. Vicosa that the protective order had not been served due to Chief Damon's order and, in furtherance of public safety and compliance with law, advised her of her right to file a complaint against Chief Damon.

14. On November 22, 2021, the York County District Attorney announced that Ms. Vicosa had filed a private criminal complaint against Chief Damon, which would be investigated by the Pennsylvania Attorney General's Office.

15. The very next day, on November 23, 2021, Plaintiff was placed on administrative leave pending an investigation, allegedly based on complaints by Chief Damon regarding:
   a. Alleged disparaging statements made on or off duty
   b. Allegedly disclosing Chief Damon's home address to Ms. Vicosa
   c. Explaining to Ms. Vicosa how to file a complaint against Chief Damon

16. The temporal proximity between Ms. Vicosa's complaint and Plaintiff's placement on leave - just one day - creates a strong inference of retaliatory motive. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (holding that causation can be proved through unusually suggestive temporal proximity).

17. During his interview with the Attorney General's Office on December 6, 2021, Plaintiff truthfully denied providing Chief Damon's address to Ms. Vicosa and maintained that the order not to serve the protective order was illegal.

18. Ms. Vicosa later confirmed in her interview that Plaintiff never provided her with Chief Damon's address, completely discrediting one of the primary bases for Plaintiff's discipline.

19. Despite this vindication, Defendants continued their pattern of retaliation through numerous adverse employment actions, including:

   a. Demotion from Corporal position (February 2022)
   b. Removal from specialized duties including SWAT, Firearms Instructor, Active Shooter Instructor, and Honor Guard (April 2022)
   c. Denial of ability to serve as Officer in Charge despite seniority (April 2022)
   d. Systematic denial of all overtime opportunities (64 documented denials between May 2023 and May 2024)
   e. Exclusion from mandatory training and staff meetings (ongoing)
   f. Restriction of law enforcement authority without cause (ongoing)
   g. Refusal to honor terms of two separate settlement agreements (August 2022 and August 2023)
   h. Enhanced scrutiny and different standards than peers (ongoing)
   i. Denial of secondary employment opportunities permitted to other officers (December 2023)

20. These actions would deter a person of ordinary firmness from exercising their constitutional rights. See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).

21. Multiple supervisors have explicitly acknowledged the retaliatory treatment:

   a. On May 16, 2023, Sgt. Montgomery stated to Plaintiff, "I guess it sucks to be you right now" and "Because you're Dan Miller," when asked about differential treatment.

   b. On July 18, 2023, Det. Buschman stated that "Chief Damon made perfectly clear he doesn't want Dan doing anything."

   c. On July 28, 2023, Sgt. Krzywulak acknowledged Plaintiff was "being treated differently" and advised that supervisors were directed by Chief Damon to deny all overtime requests.

22. These statements provide direct evidence of retaliatory intent and discriminatory application of department policies.

Settlement Agreements and Continued Violations

23. In August 2022, Plaintiff entered into a settlement agreement with Defendants that provided for:
   a. Payment of differential in base salary lost
   b. Payment for lost overtime
   c. Payment for holiday pay lost
   d. Credit for compensatory time
   e. Restoration of rank
   f. Reassignment to an administrative position

24. Defendants failed to honor these terms, forcing Plaintiff to file an Unfair Labor Practice charge.

25. A second settlement agreement was reached in August 2023, which Defendants have also failed to fully honor.

## CAUSES OF ACTION

### COUNT I - First Amendment Retaliation under 42 U.S.C. § 1983
### (Against All Defendants)

26. Plaintiff incorporates by reference paragraphs 1-25 as if fully set forth herein.

27. To establish a First Amendment retaliation claim, a public employee must show: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006).

28. Plaintiff engaged in constitutionally protected speech when he:
   a. Reported Chief Damon's illegal order regarding the protective order service
   b. Testified truthfully to the Attorney General's Office
   c. Assisted Ms. Vicosa in exercising her constitutional right to petition the government

29. This speech addressed matters of public concern, specifically:
   a. The proper enforcement of protective orders
   b. Public safety
   c. Official misconduct
   See Borden v. School District of the Township of East Brunswick, 523 F.3d 153, 168 (3d Cir. 2008).

30. Plaintiff's interest in speaking out about these matters of public concern outweighed any governmental interest in efficiency. See Pickering v. Board of Education, 391 U.S. 563 (1968).

31. Defendants retaliated against Plaintiff through numerous adverse actions detailed in paragraphs 19-20.

32. The causal connection between Plaintiff's protected activity and the adverse actions is evidenced by:
   a. Close temporal proximity between protected activities and adverse actions
   b. Pattern of antagonism following protected activities
   c. Direct statements by supervisors acknowledging retaliatory treatment
   See Lauren W., 480 F.3d at 267.

33. The Board is liable because:
   a. It failed to respond to Plaintiff's formal complaints about retaliation
   b. It ratified Chief Damon's retaliatory actions
   c. It maintained a policy or custom of allowing retaliation against officers who report misconduct
   See Monell v. Department of Social Services, 436 U.S. 658 (1978).

### COUNT II - Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq.
### (Against All Defendants)

34. Plaintiff incorporates by reference paragraphs 1-33 as if fully set forth herein.

35. The Pennsylvania Whistleblower Law prohibits retaliation against employees who report wrongdoing or waste to employers or appropriate authorities. 43 P.S. § 1423(a).

36. Plaintiff made good faith reports of wrongdoing when he:
   a. Reported the illegal order regarding protective order service
   b. Cooperated with the Attorney General's investigation
   c. Filed formal complaints about ongoing retaliation

37. These reports constituted "wrongdoing" under the law as they detailed violations of state law and department policies.

38. Defendants retaliated against Plaintiff because of these reports through the adverse actions detailed in paragraphs 19-20.

39. The causal connection is established through:
   a. Temporal proximity between reports and adverse actions
   b. Pattern of antagonism
   c. Statements by supervisors acknowledging retaliatory motive

## COUNT III - Breach of Contract
### (Against YCRPD and Board)

40. Plaintiff incorporates by reference paragraphs 1-39 as if fully set forth herein.

41. Plaintiff entered into two valid and binding settlement agreements with Defendants.

42. Defendants breached these agreements by:
   a. Failing to provide agreed-upon compensation
   b. Failing to restore Plaintiff to his previous duties
   c. Continuing retaliatory actions
   d. Failing to pay overtime as agreed
   e. Failing to honor rank restoration terms

43. These breaches have caused Plaintiff substantial monetary damages and continued professional harm.

## COUNT IV - Civil Conspiracy
### (Against All Defendants)

44. Plaintiff incorporates by reference paragraphs 1-43 as if fully set forth herein.

45. Defendants acted in concert to retaliate against Plaintiff for his protected activities.

46. This conspiracy is evidenced by:
   a. Coordinated actions to restrict Plaintiff's duties
   b. Systematic denial of overtime opportunities
   c. Shared understanding among supervisors regarding treatment of Plaintiff
   d. Joint participation in breaching settlement agreements

PRA